**ESTADO LIBRE ASOCIADO DE PUERTO RICO**
**TRIBUNAL DE PRIMERA INSTANCIA**
**REGION JUDICIAL DE UTUADO**
**SALA SUPERIOR DE UTUADO**

| | |
|---|---|
| **SARA BONILLA TORRES**<br><br>Parte Peticionaria<br><br>**v.**<br><br>**ME SALVE, INC.**<br>**SERAL, INC.**<br>**FULANOS DE TAL 1-100**<br><br>Parte Peticionada | **CIVIL NÚM:**<br><br><br>**SOBRE:**<br><br>**INTERDICTO ESTATUTARIO**<br>**PRELIMINAR Y PERMANENTE**<br>**42 U.S.C. § 12188** |

## PETICIÓN DE INTERDICTO ESTATUTARIO

**AL HONORABLE TRIBUNAL:**

Comparece la parte peticionaria, Sara Bonilla Torres (en adelante, "Parte Peticionaria"), a través de la representación legal que suscribe, y solicita un interdicto preliminar y permanente al amparo de 42 U.S.C. § 12188 debido al incumplimiento de Me Salve, Inc., Seral, Inc. y Fulanos de Tal 1-100 (en adelante, "Parte Peticionada con las disposiciones del Título III de la ley federal conocida como American with Disabilities Act, 42 U.S.C. § 12181 et seq. (en adelante nos referimos al estatuto federal como "Ley ADA").[1]

La Parte Peticionaria presentará moción en solicitud de interdicto preliminar luego de que se haya hecho el diligenciamiento del emplazamiento.

---

[1] El Título III de la Ley ADA obliga a todas las entidades privadas y facilidades comerciales que brindan servicios al público. La obligación impuesta por el Título III consiste en no discriminar en el ofrecimiento de dichos servicios hacia las personas con impedimentos en el disfrute igual y pleno de los bienes, servicios y facilidades, privilegios, ventajas o acomodos en cualquier lugar de acomodo público. El enlace oficial del gobierno de los Estados Unidos con información sobre Titulo II/III de Ley ADA es: http://www.ada.gov/

## EL LUGAR DE ACOMÓMO PÚBLICO EN CUESTIÓN

1.     Esta es una acción que busca remediar la discriminación ilegal en un lugar de **acomodo público**[2] establecido y conocido en el lugar que se menciona a continuación:

**TIENDAS ME SALVE; LARES MALL SHOPPING CENTER**
Catastro: 159-000-001-23-000
Parcela: 159-000-001-23
Procedencia: 159-000-001-23
Dueño Registral: SERAL, INC.
Dirección física Registral:
KM.HM 003 4 CARR 111 BO PUEBLO, LARES

(en adelante, nos referiremos a este lugar como "la Propiedad" o el "lugar de acomodo público").

## NECESIDAD DE LA ACCION

2.     Esta Petición de interdicto permanente es necesaria por lo siguiente:

a)  La Parte Peticionada no procuró la eliminación de barreras arquitectónicas;

b)  La Parte Peticionada mantiene en el lugar de acomodo público barreras arquitectónicas en violación de la ADA y a las Guías de Diseño Accesible promulgadas por el Departamento de Justicia de los Estados Unidos, las cuales puede ser accedidas a través del siguiente enlace oficial: https://www.ada.gov/2010ADAstandards_index.htm

---

[2] El término  "public accommodation" o lugar de acomodo público, 42 U.S.C. 12181(7), se define como entidades privadas cuyas operaciones afectan el comercio y específicamente se mencionan los siguientes lugares a modo de ejemplificar lo que es un lugar de acomodo público: hoteles, moteles, hospederías, restaurantes, barras, otros establecimientos que sirvan comida o bebidas, cines, teatros, salas de conciertos y presentaciones, estadios, lugares para exhibiciones o entretenimiento, auditorios, centros de convenciones, salas de presentaciones, lugares de congregación, panaderías, tienda de comestibles, tiendas de ropa, tiendas de herramientas, centros comerciales, otros establecimientos de ventas o renta, lugares de lavado ("laundromat"), secado (dry-cleaning), bancos, barberías, salones de belleza, agencias de viaje, servicios de reparación de zapatos, funerarias, estaciones de gasolina, oficina de un contable o abogado, farmacias, oficinas de seguros, oficina de profesionales de la salud, hospitales, otros establecimiento de servicios, un terminal o estación utilizado para transportación pública, museos, librerías, galerías, otros lugares donde haya exhibiciones públicas o colecciones, parques, zoológicos, parques de diversión y otros lugares de recreación, centro de cuido de infantes ("nursery"), escuelas elementales, secundarias, universidades, o escuelas post-graduadas privadas o cualquier otro lugar se provea educación, centro de cuido de niños, centro de cuido de "seniors", refugios de personas sin hogar, lugares donde se da comida, agencias de adopción, o cualquier otro establecimiento donde se dan servicios sociales, gimnasios, spas de salud, boleras, lugares de golf y otros lugares de ejercicio y recreación.

c) La Parte Peticionaria visitó el lugar de acomodo público y allí encontró personalmente barreras arquitectónicas que se relacionan con su discapacidad;

d) La Parte Peticionaria se (i) encuentra en inminente riesgo de encontrar las barreras arquitectónicas o (ii) sería fútil regresar al lugar de acomodo público en este momento ya que constituiría un riesgo a la seguridad personal de la Parte Peticionaria o equivaldría a someterse a una condición o situación desagradable, humillante y discriminatoria;

e) La parte peticionaria tiene la intención presente de poder disfrutar los bienes, privilegios, servicios que están disponibles en el lugar de acomodo público una vez las barreras arquitectónicas sean removidas en su totalidad. Sin embargo, la Parte Peticionaria se reserva el derecho de regresar al lugar de acomodo público en cualquier momento antes de que se remuevan las barreras arquitectónicas, aunque ello represente someterse a condiciones peligrosas o discriminatorias, con el fin de buscar, identificar y denunciar el discrimen.

## LA PARTE PETICIONARIA

3.     La Parte Peticionaria es una persona que sufre de una discapacidad física o mental que limita sustancialmente varias de sus actividades cotidianas principales. **La discapacidad física de la Parte Peticionaria es:** Lupus, Osteoartritis, fibromialgia, síndrome de coagulación, síndrome de Sjögren. Dicha discapacidad física limita sustancialmente (en comparación con la mayoría de la población) al menos una de las siguientes actividades principales cotidianas o del diario vivir: cuidarse a sí mismo, realizar tareas manuales, ver, oír, comer, dormir, caminar, estar de pie, , levantar objetos, inclinarse, hablar, respirar, aprender, leer, concentrarse, pensar, comunicarse, trabajar y otras que enciclopedias, diccionarios y tratados médicos autoritativos han relacionado con la discapacidad antes mencionada.

4.     La parte Peticionaria tiene un "disability", según definido por la Ley ADA. 42 U.S.C. § 12102(1)(A).

5.     El Departamento de Transportación y Obras Gobierno de Puerto Rico (DTOP) ha expedido para beneficio de la Parte Peticionaria un rótulo removible de personas con impedimento físico, de modo que la Parte Peticionaria pueda utilizar el rótulo para estacionarse en estacionamientos identificados como accesibles o "de impedido".  El rótulo removible no tiene que ser utilizado en un vehículo especifico ni tiene que ser utilizado en un vehículo de motor inscrito a favor de la parte Peticionaria. La Parte Peticionaria tiene derecho a utilizar el rótulo removible expedido por DTOP en cualquier vehículo, ya sea uno propio, un familiar, un amigo o un vehículo que haya abordado de manera incidental. La Parte Peticionaria tiene derecho legal a utilizar estacionamientos designados como accesibles o "de impedidos" en esta jurisdicción sin importar el vehículo de motor en el que se encuentre abordo.

## LA PARTE PETICIONADA

6.     La Parte Peticionada está integrada por las siguientes personas naturales o jurídicas:

  i. Me Salve, Inc. Esta persona jurídica es titular, arrendadora, arrendataria u operadora de la Propiedad que se identifica en el primer párrafo de esta Petición.

  ii. Seral, Inc. Esta persona jurídica es titular, arrendadora, arrendataria u operadora de la Propiedad que se identifica en el primer párrafo de esta Petición.

  iii. Fulanos de Tal 1-100. Estas personas naturales o jurídicas desconocidas son titulares, arrendadores, arrendatarios y operadores del la Propiedad que se identifica en el primer párrafo de esta Petición.  Ya que la identidad de estos se desconoce en estos momentos, se enmendará la

4

Petición a los fines de acumularlos a este procedimiento civil. En esta Petición, el término "Parte Peticionada" incluye también a todos los peticionados desconocidos identificados con el nombre ficticio "Fulano de Tal 1-100".

## JURISDICCIÓN Y COMPETENCIA

9.    De este procedimiento civil ser removido al Tribunal de Distrito de los Estados Unidos, se invoca jurisdicción sobre la materia de conformidad con 28 U.S.C. §§ 1331 y 1343 (a)(3) y (a)(4) por violaciones de la ADA.

10.    El Tribunal de Primera Instancia tiene jurisdicción original para dilucidar controversias que surgen al amparo del Título III de la American with Disabilities Act, 42 U.S.C. § 12181 et seq.

11.    Esta acción civil ha sido presentada ante el foro judicial que ostenta la competencia toda vez que la Propiedad en controversia está ubicada en esta región judicial.

## HECHOS

12.    La Propiedad es un lugar de acomodo público según definido por la Ley ADA, 42 U.S.C. 12181(7) y es un lugar abierto al público y cuya operación afecta el comercio. La Propiedad no es residencial, no es un club privado ni es una iglesia.

13.    La Parte Peticionaria es residente de Puerto Rico y vive muy cerca la Propiedad en vehículo de motor.

14.    La parte peticionaria visitó la Propiedad para eso del 15 de mayo de 2020 y encontró barreras que interfirieron con la capacidad de la Parte Peticionaria para usar y disfrutar los bienes, servicios, privilegios y acomodos ofrecidos en la Propiedad.

15.    Además, con independencia de lo expresado anteriormente sobre la fecha de la visita, el día de hoy la Parte Peticionaria se ha sentido disuadida o desalentada de visitar la Propiedad porque tiene conocimiento de las barreras ilegales que limitan e interfieren con su acceso a la Propiedad. La Parte Peticionaria sabe que sería fútil e

inútil enfrentar estas barreras porque enfrentarlas equivale a someterse a una situación humillante, discriminatoria y peligrosa. Todas barreras aquí descritas están directamente relacionadas con la discapacidad de la Parte Peticionaria e interfieren su completo y acceso igual acceso.

16.    A base de sus observaciones personales, y a base de su experiencia como persona con limitaciones que ha visto cientos de lugares accesibles y no accesibles a través de su vida, la Parte Peticionaria alega afirmativamente que existen las siguientes barreras arquitectónicas en la Propiedad relacionadas a su discapacidad:

**Acceso Adentro de la Propiedad: Acceso a Bienes y Servicios**

a)    Los pasillos, góndolas, filas o caminos --ya sea para mirar los productos, acceder áreas de servicios, áreas de venta o pago, o cada tipo de mostrador de servicio y venta-- no tienen un espacio de al menos 36" que permita la movilidad adecuada dentro de la Propiedad de manera sustancialmente inconsistente con la reglamentación aplicable. ADAAG 2010 § 403.5.1 (véase ilustración abajo). Posibles soluciones: reubicar los objetos para hacer espacio. Véase por su valor persuasivo y referencias a los estándares aplicables el caso Lieber v. Macy's West, Inc., 80 F. Supp. 2d 1065 (N.D. Cal. 1999)(caso que discute las normas aplicables a la ubicación de la mercancía y objetos dentro de la conocida tienda Macy's de Union Square en San Francisco, California. [3] El propósito esencial de la reglamentación es que haya espacios disponibles para que las personas con discapacidades tengan igual oportunidad de moverse a través del local).  Se cree que el comandado Me Salvé, Inc. opera numerosas otras tiendas en Puerto Rico donde mantiene una idéntica práctica de negocios, es decir, una práctica de colocar los racks de

---

[3] La zona debe su nombre debido a que en su momento fue un punto de encuentro y apoyo para Ejército de la Unión durante la Guerra Civil. Hoy día la plaza está rodeada de tiendas por departamento y tiendas de regalo para los locales y miles de turistas que visitan el área de la bahía de San Francisco.

ropa tan juntos que no permite que las personas con discapacidades puedan moverse de manera adecuada, digna e igualitaria dentro de sus tiendas de ropa; y dicha configuración de los objetos es sustancialmente inconsistente con la reglamentación aplicable.



b) No se provee un probador (donde las personas se puede probar la ropa) que tenga un espacio y banco ("bench") designado para que las personas con discapacidades se puedan integrar adecuadamente. La configuración existente es sustancialmente inconsistente con la reglamentación aplicable. ADAAG 2010 §§ 222.1, 803.4, 903. Posibles soluciones: proveer un probador con el banco y espacio según lo requiere la Reglamentación.

c) Existe una fila de pago y mostrador ("checkout aisle"), pero las dimensiones y espacios son sustancialmente inconsistentes con la reglamentación aplicable. ADAAG 2010 § 7.3; ADAAG 2010 §§ 904.3.1 (pasillo de pago de 36"), 904.3.2 (superficie no más alta de 38"), 216.11 (hay más de un pasillo de pago pero no hay un pasillo rotulado con el símbolo de accesibilidad internacional). Posibles soluciones: ampliar el ancho del pasillo y modificar el tamaño del mostrador de pago.

d) Hay mostradores de ventas y servicios, pero la configuración y dimensiones son sustancialmente inconsistentes con la reglamentación aplicable. ADAAG 1991 § 7.2 ADAAG 2010 §§ 904.3.1 (requiriendo que haya una porción del

mostrador que sea 36" de alto por 36" de ancho), 904.4 (requiriendo que la parte accesible del counter sea de la misma profundidad que la parte no accesible), 904.4, 904.1 (requiriendo un espacio mínimo para acercamiento paralelo u horizontal al mostrador), 306.2.2, 306.2.4, 306.3.1 (requiriendo un espacio debajo del mostrador cuando el diseño del mostrador es para acercamiento frontal). Posibles soluciones: bajar una sección del mostrador, ampliar una sección del mostrador, remplazar el mostrador, ampliar la profundidad del mostrador, reconfigurar espacios para permitir acercamiento paralelo o frontal, reconfigurar mostrador para dar el espacio requerido debajo del mostrador en casos de diseño para acercamiento frontal.

17.    Las barreras identificadas en el párrafo anterior son solo aquellas que la Parte Peticionaria conoce personalmente a base de su experiencia y sentido común como persona con discapacidades, no a base de pruebas científicas o periciales.   La totalidad de las barreras existentes en la Propiedad, incluyendo las encontradas y otras no descubiertas al momento, son la causa del daño legal de la Parte Peticionaria, es decir, la falta de acceso completo, libre y espontaneo a la Propiedad. Por esto, es la intención de la Parte Peticionaria utilizar los mecanismos de descubrimiento de prueba para buscar, identificar y señalar todas aquellas barreras arquitectónicas relacionadas con la discapacidad de la Parte Peticionaria para que el acceso a la Propiedad sea completo e igualitario.  Luego de identificadas las barreras, la Parte Peticionaria se propone solicitar al tribunal enmendar las alegaciones para conformar las mismas a la prueba descubierta sobre violaciones a la ADAAG ahora desconocidas.

18.    Si bien la Parte Demandante ha podido identificar las barreras antes mencionadas sin necesidad de conocimiento especializado pericial por lo claras y patentes que son, se cree de buena fe que existen otras potenciales configuraciones arquitectónicas en el Centro Comercial podría ser inconsistentes con la

reglamentación federal aplicable. Estas áreas y/o tiendas donde se cree hay deficiencias arquitectónicas son: estacionamientos, rutas de acceso, rampas y entradas del centro comercial (ADAAG 1991 § 4.3; ADAAG 2010 § 206); y violaciones similares a las antes descritas en los siguientes tiendas del Centro Comercial: Jeans.net; Huberto Vidal; Supermercado Econo, Always 99, y Super Monfongo. Se excluye de esta demanda cualquier alegación en contra del United States Postal Service y/o el espacio que ocupa, ya que la Ley ADA no es de aplicación al gobierno federal.

19. La Parte Peticionaria se ha visto desalentada, y al presente se siente desalentada, de visitar la Propiedad porque la Parte Peticionaria sabe que los bienes, servicios, acomodos, privilegios, ventajas y facilidades de la Propiedad no puede ser accedidas sin que la Parte Peticionaria se someta nuevamente al discrimen. La Parte Peticionaria conoce los bienes y servicios ofrecidos en la Propiedad, y regresará a la Propiedad una vez que se eliminan las barreras.

20. Los peticionados sabían, o debían saber, que la Propiedad era y es inaccesible; que las condiciones la Propiedad violan la ley federal e interfieren (o niegan) el acceso a los discapacitados. Además, los peticionados tienen los recursos financieros para eliminar estas barreras de la Propiedad (sin mucha dificultad o gasto), y hacer que la Propiedad sea accesible para la Parte Peticionaria. Hasta la fecha, sin embargo, la Parte Peticionada se niega a eliminar esas barreras.

21. La Parte Peticionada ha poseído y disfrutado de suficiente control y autoridad para modificar la Propiedad para eliminar barreras y cumplir con la reglamentación federal aplicable. La Parte Peticionada no ha eliminado tales barreras y no ha modificado la Propiedad para cumplir con los estándares de accesibilidad aplicables. La Parte Peticionada, de manera intencional, ha mantenido la Propiedad en su estado actual y se ha abstenido intencionalmente de alterar la Propiedad para que cumpla con los estándares de accesibilidad.

22.    La Parte Peticionaria alega afirmativamente que la presencia contínua de barreras en la Propiedad es tan obvia y abierta que establece la intención discriminatoria de la Parte Peticionada. La naturaleza de las desviaciones a los estándares federales no sugiere incumplimiento con la reglamentación debido a mera negligencia o un error humano. El incumplimiento existente es tan sustancial que es obvio para un observador casual de inteligencia promedio que no tiene pericia en los estándares de diseño accesible o que no tiene experiencia con barreras arquitectónicas por no tener una discapacidad.  Es a base de esto que la Parte Peticionaria cree, y por tanto alega afirmativamente, que la intención discriminatoria incluye la negativa consciente y ponderada de no adherirse a normas de construcción relevantes; el menosprecio hacia los planos de construcción y permisos emitidos para la Propiedad; la decisión concienzuda de mantener el diseño arquitectónico (tal como existe actualmente) en la Propiedad; la decisión de no eliminar las barreras arquitectónicas mantenerla en estado de incumplimiento motivado por fines de lucro. Se alega afirmativamente que la Parte Peticionaria ha querido mantener una competencia desleal con sus competidores al no invertir dinero en cumplir con el mandato federal a pesar de que sus competidores si tienen que invertir en cumplimiento, lo que afecta a otros actores económicos.   Las barreras arquitectónicas en la Propiedad no son interrupciones aisladas (o temporales) de acceso por mantenimiento o reparaciones.

23.    Basado en el incumplimiento histórico de la Parte Peticionada con la ADAAG, la Parte Peticionaria cree, y por lo tanto alega, que la Parte Peticionada no tiene políticas, procedimientos o documentos internos en relación a esfuerzos de cumplimiento de ADA en la Propiedad.

## CAUSA DE ACCIÓN
### American with Disabilities Act de 1990

24.    La Parte Peticionaria incorpora las alegaciones contenidas en los párrafos

anteriores.

25.    El Título III de la ley ADA dispone esencialmente que ningún individuo será tratado de manera desigual por razón de discapacidad en el pleno y equitativo disfrute (o uso) de bienes, servicios, instalaciones, privilegios y acomodos ofrecidos por cualquier persona ya sea titular, arrendador, arrendatario u operador de un lugar de acomodo público. 42 U.S.C. § 12182 (a).

26.    La Parte Peticionada discriminó contra la Parte Peticionaria al negarle un disfrute y acceso pleno e igual a los bienes, servicios, privilegios y acomodos de la Propiedad durante cada visita y cada ocasión en que la Parte Peticionaria decidió no visitar el lugar.

27.    La ley ADA establece diferentes estándares dependiendo de cuándo se construyó la estructura física y si la instalación ha sido alterada desde el 26 de enero de 1992. 28 CFR §§ 36.401, 36.402. Las propiedades "existentes" antes del 26 de enero de 1992 tienen que eliminar las barreras de acceso de las personas con discapacidades cuando la eliminación sea "fácilmente alcanzable". 42 U.S.C. § 12182 (b) (2) (A) (iv); 28 CFR § 36.304. Estructuras diseñadas y construidas para ser ocupadas por primera vez después del 26 de enero de 1993 deben ser accesibles para personas con discapacidades a menos que la entidad pueda demostrar que es "estructuralmente poco práctico". 42 USC § 12183 (a). Finalmente, las alteraciones posteriores al 26 de enero, 1992 debe hacerse para garantizar que, en la "máxima extensión posible", las porciones alteradas de las instalaciones sean accesibles. 28 CFR § 36.402 (a) (1).

28.    Los estándares de diseño, ADAAG, se publicaron por primera vez en 1991 y están codificados en 28 CFR Parte 36, Apéndice A ("ADAAG de 1991"). Los más recientes estándares de diseño ADA fueron publicado por primera vez en 2010 y se codificaron en 28 CFR Parte 36, Subparte D (La ADAAG de 2010). Ambas normas están disponibles en www.ada.gov.    Todas las construcciones nuevas y

modificaciones comenzadas el 15 de marzo de 2012 o después deben cumplir con la ADAAG de 2010.

29.   La Parte Peticionaria cree que la Propiedad fue diseñada para ser ocupada por primera vez después del 26 de enero de 1993. Ver 28 CFR § 36.401.

30.   La Parte Peticionaria cree que la Propiedad está ubicada en un lugar que fue construído después del 26 de enero de 1993. Ver 28 CFR § 36.401.

31.   La Parte Peticionaria cree que la Propiedad fue "alterada" luego del 26 de enero de 1993. El término "alterada" o "alteraciones" incluye, pero no se limita a, remodelación, renovación, rehabilitación, restauración histórica, cambios o reordenamiento en partes o elementos estructurales, cambios o reordenamiento en la configuración de paredes y cambios en los mostradores, mesas u objetos dentro de la Propiedad.

32.   En la alternativa, si la Propiedad no fue diseñada y construída para ser ocupada por primera vez después de 26 de enero de 1993, la Propiedad es una instalación existente en cuyo caso hay una obligación de eliminar barreras arquitectónicas que afectan a las personas con discapacidad en  la medida que la eliminación sea "fácilmente alcanzable". 42 USC § 12182 (b) (2). La ley ADA establece que, al evaluar si la eliminación de barreras es "fácilmente alcanzable ", los factores a considerar incluyen los" recursos "de la instalación, 42 USC § 12181 (9) (b), que incluye "los recursos financieros generales de cualquier empresa matriz o entidad ", 28 CFR § 36.104. Si la Parte Peticionada sostiene que no tiene los recursos financieros a modo de defensa afirmativa para excusar su incumplimiento, la Parte Peticionaria no acepta dichos pretextos y se propone utilizar los mecanismos de descubrimiento de prueba conforme a 28 C.F.R. § 36.104.

## NO ELIMINAR LAS BARRERAS EN UNA INSTALACIÓN EXISTENTE

33.   La ADA prohíbe específicamente no eliminar las barreras arquitectónicas en instalaciones existentes cuando tal eliminación es fácilmente alcanzable. 42 USC §

12182 (b) (2) (A) (iv); 28 C.F.R. § 36.104.

34.     Cuando una entidad puede demostrar que la eliminación de una barrera no se puede lograr fácilmente, esa entidad tiene que procurar que los bienes, servicios, privilegios y acomodos se hagan disponibles mediante mecanismos alternos, si estos métodos son fácilmente alcanzables.  § 12182 (b) (2) (A) (v).

35.     Aquí, la parte Peticionaria alega que la Parte Peticionada puede eliminar fácilmente las barreras arquitectónicas en la Propiedad sin mucha dificultad o gasto, y que la Parte Peticionada viola la ley ADA al no eliminar esas barreras, cuando fácilmente podía y puede hacerlo.

36.     En la alternativa, si no es "fácilmente alcanzable" para la Parte Peticionada eliminar las barreras arquitectónicas, la Parte Peticionada violó la ADA al no hacer disponibles sus servicios a través de métodos alternativos que fuesen fácilmente alcanzables.

## NO DISEÑAR Y CONSTRUIR UNA INSTALACIÓN ACCESIBLE

37.     La Propiedad fue diseñada y construída (o ambos) después del 26 de enero de 1992 - activando los requisitos de acceso bajo el Título III de la ADA y la reglamentación promulgada por el Departamento de Justicia de los Estados Unidos.

38.     La Parte Peticionada violó la ley ADA al diseñar y construir (o ambos) la Propiedad en una manera que no era fácilmente accesible para el público con discapacidad física, incluída la Parte Peticionaria, cuando hacerlo era estructuralmente práctico.

## NO HACER ACCESIBLE UNA INSTALACIÓN ALTERADA

39.     La Parte Peticionaria cree, y por tanto alega afirmativamente, que la Propiedad ha sido alterada (según el término "alteración" es definido por §§ 202.1, §202.3, 202.4) después del 26 de enero de 1992.  28 CFR §36.403; 49 CFR §37.43.

40.     La ADA también requiere que las instalaciones se alteren de forma tal que sea

fácilmente accesible para las personas con discapacidad en la medida máxima posible. 42 U.S.C. § 12183 (a) (2).

41.    La Parte Peticionada alteró la Propiedad de una manera que violó la ADA y que la hizo no fácilmente accesible al público con discapacidad física, incluyendo a la Parte Peticionaria.

### POLÍTICAS Y PROCEDIMIENTOS

42.    La ley ADA también requiere hacer modificaciones razonables en las políticas, prácticas o procedimientos, cuando es necesario para dar igual acceso a los servicios, bienes, privilegios o acomodos a las personas con discapacidades, a menos que la entidad pueda demostrar que hacer tales modificaciones alterarían fundamentalmente su naturaleza. 42 USC § 12182 (b) (2) (A) (ii).

43.    Aquí, la Parte Peticionada violó la ley ADA al no hacer modificaciones razonables en sus políticas, prácticas o procedimientos en la Propiedad, cuando estas modificaciones son necesarias para permitir (sin alterar fundamentalmente la naturaleza del lugar de acomodo público) el igual acceso a los bienes, servicios, instalaciones, o acomodos.

44.    La Parte Peticionaria busca todo remedio disponible bajo la ADA (es decir, interdicto preliminar y permanente, honorarios de abogados, costos y gastos legales) por estas violaciones mencionadas. 42 USC § 12205.

45.    La Parte Peticionada alega que la falta de eliminación de barreras ha sido a sabiendas, voluntaria e intencional porque:

    i.    Las barreras descritas aquí son claramente visibles y tienden a ser obvias incluso a un observador casual;

    ii.    La Parte Peticionada jamás ha reconocido que el cumplimiento de ADA no es un esfuerzo de una sola vez, sino una obligación *continua*. Se han negado a eliminar barreras o crear alternativas para dar acceso;

    iii.    La Parte Peticionaria es titular, arrendador, arrendatario y/o operador

de la Propiedad, y como tal tiene control sobre las condiciones de la misma día a día. La Parte Peticionada ha tenido los medios y la capacidad financiera de hacer la remediación necesaria de las barreras de acceso, pero eso nunca le ha interesado.

iv. Los lugares de acomodo público tienen la obligación de ser accesibles. Existe una consecuencia si no lo hacen: se puede ser objeto de un procedimiento civil, ya sea iniciado por el gobierno federal, estatal o una persona privada.  La Parte Peticionaria decidió no ser proactiva y para proporcionar acceso por iniciativa propia.  La Parte Peticionada asumió una actitud que se puede describir como "vamos a esperar, no hagamos nada, resolvemos si pasa algo". La ley ADA se firmó el 26 de julio de 1990 por el entonces presidente George H.W. Bush luego de que fuese aprobada mediante consenso bipartita. La Parte Peticionada no tiene excusas para haber evadido sus obligaciones legales, y tampoco el desconocimiento de la ley excusa sus consecuencias y cumplimiento.

v. La Parte Peticionada ignora las experiencias de las personas con discapacidades que no pueden comprar, realizar transacciones comerciales personales, visitar al médico o recrearse como la mayoría de las personas.  Son muchos los lugares en todo Puerto Rico, como en la Propiedad de la Parte Peticionada, donde se han ignorado los requisitos razonables de la ley ADA. La ley ADA tiene la capacidad de hacer la diferencia entre la participación y la exclusión diaria.

vi. La Parte Peticionada también ignora sus propias experiencias en otros lugares de acomodo público. Esto es, la Parte Peticionada ha visto que en otros lugares existen estacionamientos accesibles, baños accesibles, mostradores accesibles y muchos elementos más en cumplimiento, por

UT2020CV00169 17/07/2020 05:54:29 pm Entrada Núm. 1   Página 16 de 22

lo que tenía y tiene conocimiento de cuales son los accesos que se deben dar a las personas con discapacidades.

vii.   La Parte Peticionada sabe que los permisos administrativos estatales y municipales no equivalen a cumplimiento con las leyes de accesibilidad aplicables. La Parte Peticionaria cree, y por tanto alguna, que algunos de los permisos municipales y estatales que tiene la Parte Peticionada para operar su lugar de acomodo público señalan expresamente que el permiso para operar el negocio no equivale a una certificación de cumplimiento con la ley ADA.

viii.  Se cree, y por tanto se alega, que existen certificaciones de arquitectos, ingenieros, contratistas, gestores y empleados de gobierno donde se certificó de manera contraria a la realidad (potencialmente fraudulenta, sujeto a investigación y descubrimiento de prueba) que la propiedad cumplía con la reglamentación de la ley ADA con el propósito de diseñar, construir, alterar u operar la Propiedad en controversia en violación a la reglamentación federal. La Parte Peticionada no puede ampararse en actos impropios suyos o de terceros para justificar la operación continua de un lugar de acomodo público que viola la reglamentación federal aplicable.

ix.   La Parte Peticionada no tiene obligación de dar una notificación por escrito de la falta de accesibilidad. Ninguna otra ley de derechos civiles permite que los comercios y lugares de acomodo público discriminen sin consecuencia hasta que las víctimas de la discriminación notifiquen al negocio que se ha violado la ley.  Si fuese un requisito dar "notificación" a la persona que viola derechos civiles, los lugares de acomódo público no serían proactivos en la eliminación de las barreras arquitectónicas. En su lugar, muchos asumirían una actitud de "mejor

espero y resuelvo si alguien dice <u>y prueba</u> que me dio aviso de lo que es obvio que está mal". La ADA no coloca el peso de actuar en las personas con discapacidades que la ley busca proteger; el deber de ser proactivo lo tiene el lugar de acomodo público. Si fuese un requisito dar avisos al establecimiento, el costo de dar el aviso y probar que se dio el aviso va a recaer sobre la persona con discapacidades, quienes usualmente ya tienen capacidad financiera limitada. Por ejemplo, un aviso escrito por un lego probablemente resulte en una litigación extensiva y controversia de hecho sobre si ese aviso realmente se entregó a una persona con autoridad (como si fuese un emplazamiento), si se envió por correo a la dirección correcta (en un contexto donde muchos comercios operan de manera informal y sin direcciones postales) o controversias sobre si realmente se envió el escrito (forzando al discapacitado a asumir el costo de envío de cartas por correo certificado) o controversias interminables sobre si el aviso fue suficiente, especifico o completo. Los discapacitados encuentran múltiples barreras diariamente o no van a lugares porque saben que no son accesibles (contrario a una persona que no sufre accidentes de transito todos los días), de modo que los discapacitados, bajo el enfoque de dar "avisos" tendrían que invertir mucho dinero en enviar carta por correo certificado o entregar a la mano a persona con autoridad estos avisos. Requerir avisos evitaría que el tribunal se concentre en la sustancia del mandato federal, accesibilidad, y pondría escollos procesales al ejercicio de los derechos.

x. Establecer y administrar un negocio requiere cumplimiento de muchas leyes y normas. Ese es el costo de hacer negocios. Quien decide operar un lugar de acomodo publico, tiene que cumplir con las leyes aplicables

desde el día uno. Actúa de manera a sus propios actos quien decide operar un lugar de acomodo público que desde el día uno excluye o limita el acceso a las personas con discapacidades. Es impensable que se busque retrasar (mediante requerir "avisos") o eliminen las consecuencias para las pequeñas o grandes empresas que no paguen impuestos o no cumplan con los códigos de salubridad y seguridad. Violar los derechos de las personas con discapacidad no debe tratarse de manera diferente. También es inaceptable que se requiera cumplimiento a las "grandes" empresas y no a las medianas o pequeñas (o viceversa) o que se requiera cumplimiento dependiente del lugar de incorporación de la compañía o dependiendo del originen nacional o raza de los dueños o accionista de la compañía o empresa.

xi. Hay grandes esfuerzos federales para educar a los dueños de negocios sobre sus obligaciones de la ADA, incluido el sitio web detallado del Departamento de Justicia de los Estados Unidos sobre cumplimiento con ADA (ada.gov), la línea directa del Departamento de Justicia, materiales de asistencia técnica extensa del Departamento de Justicia y los diez centros regionales ADA financiados por el gobierno federal que proporcionan recursos a profundidad y capacitación en todos los estados ( adata.org ). Sin embargo, la Parte Peticionada no ha hecho ningún esfuerzo significativo y proactivo para cumplir con la ADA.

xii. A base del incumplimiento histórico y nivel de incumplimiento, se cree que la Parte Peticionada jamás ha reconocido que los estándares de accesibilidad de ADA son extremadamente importantes. No son detalles menores o reglas exigentes, sino más bien, son esenciales para garantizar la verdadera accesibilidad. Una puerta que es demasiado estrecha puede ser la diferencia entre acceder a un negocio o no. Un

baño con un espacio muy pequeño puede hacer la diferencia entre usar o no un baño. Dicho esto, es importante señalar que para imponer responsabilidad bajo la ley ADA, la barrera no necesita excluir completamente a la Parte Peticionaria de entrar o usar la instalación; solo necesita *interferir* con el disfrute pleno e igual de la Parte Peticionaria. La ADAAG establece estándares técnicos requeridos para que haya un "disfrute pleno e igualitario". Por eso, si una barrera viola el ADAAG y dicha barrera se relaciona con la discapacidad de la Parte Peticionaria, el igual y completo acceso se ve menoscabado, lo que constituye discriminación bajo la ADA.

xiii. Se sabe que las personas con discapacidad experimentan una pérdida de dignidad, independencia, personalidad y orgullo asociados con la segregación y la falta de acceso a alojamientos públicos. Beyond the Price Tag: An Economic Analysis of Title III of the Americans with Disabilities Act, 20 Kan. J. L. & Pub. Pol'y 58, 76, 85 (Fall 2010). Las barreras de acceso y la segregación crea estigma social y socava los sentimientos de autoestima e independencia de las personas con discapacidad. Stacey Menzel Baker, Jonna Holland and Carol Kaufman- Scarborough, How Consumers with Disabilities Perceive "Welcome" in Retail Servicescapes: A Critical Incident Study, 23 J. of Serv. Marketing 160, 167-168 (2007). Las barreras también causan que las personas con discapacidad tengan una reacción general negativa a todo el entorno minorista, y experimentar miedo e incomodidad en ese ambiente. Carol Kaufman-Scarborough, Reasonable Access for Mobility-Disabled Persons is More Than Widening the Door, 75 J. of Retailing 479, 483, 494 (1999). Véase además, The Routledge Handbook of Designing Public Spaces for Young People: Processes,

Practices and Policies for Youth Inclusion (2020) (discutiendo el concepto de acceso a una experiencia sustancialmente similar, más allá del acceso físico, desde una perspectiva científica); Moreno Llopis, Beatriz. La arquitectura al servicio de la discapacidad funcional. Diss. 2020; Cruz, Vanessa Vianna, et al. "Accessibility barriers for people with disabilities or reduced mobility: an integrative review." Research, Society and Development 9.4 (2020): 168943053; Carol Kaufman-Scarborough and Stacey Menzel Baker, Do People with Disabilities Believe the ADA Has Served Their Consumer Interests?, 39 J. of Consumer Aff. 1, 24 (Summer 2005); Baker, Stacey Menzel, Jonna Holland, and Carol Kaufman- Scarborough. How consumers with disabilities perceive "welcome" in retail servicescapes: a critical incident study. Journal of Services Marketing (2007); Realm, Public. Experiential Accessibility. La inaccesibilidad en la web también constituye también unos de los grandes retos modernos.  Cohen, Alex H., Jorge E. Fresneda, and Rolph E. Anderson. What Retailers Need To Understand About Website Inaccessibility And Disabled Consumers: Challenges And Opportunities. Journal of Consumer Affairs.

xiv. La Parte Peticionaria rechaza con vehemencia argumentos de que hacer valer la ley ADA de manera privada es ilegítima. La ley debe cumplirse independientemente que el lugar de acomodo público sea una entidad pequeña, mediana o grande. La Ley ADA no permite discriminar a unos sí y a otros no. La prohibición de discriminen es absoluta y aplica a todos por igual.  No se hace distinción por origen social, nacional, ciudadanía o residencia legal de quien opera un lugar de acomodo público, sea una persona natural o jurídica. Cumplir con los estándares de accesibilidad física de la ADA requiere que los dueños de negocios

tomen medidas proactivas y, a menudo, incurrir en costos. Desafortunadamente, en este caso, la ley ni la posibilidad de ser objeto de una acción civil (de parte del gobierno o privada) fue suficiente incentivo para que se diera un cumplimiento voluntario. La ADA no fue suficiente para convencer a la Parte Peticionada a cumplir con la ley y el objetivo de esta Petición es procurar que finalmente se cumpla el mandato de ley.

## REMEDIO

**POR TODO LO CUAL**, la Parte Peticionaria muy respetuosamente solicita los siguientes remedios legales:

A. Una sentencia declaratoria disponiendo que la parte Peticionada ha violado los requisitos del Título III de la ADA y la reglamentación de implementación relevante de la ADA; y que la Propiedad no es completamente accesible y utilizable de manera independiente para personas con movilidad limitada como la Parte Peticionaria;

B. Un interdicto preliminar y permanente de conformidad con 42 USC § 12188 (a) (2) y 28 CFR § 36.504 (a) que ordene a la Parte Peticionada a que tome todos los pasos necesarios para eliminar las barreras arquitectónicas descritas anteriormente y para que sus instalaciones cumplan con los requisitos establecidos en la ADA y sus reglamentos de implementación, para que sus instalaciones sean totalmente accesibles a, y de forma independiente, por personas con movilidad limitada, y que además ordene que el tribunal retendrá jurisdicción por un período para supervisar que la Parte Peticionada cumpla con los requisitos relevantes de la ADA y para asegurarse de que la Parte Peticionada haya adoptado y siga una política institucional que de hecho haga que la Parte Peticionada permanezca totalmente en cumplimiento con la ley;

C. En caso de que la Parte Peticionada continúe su condición discriminatoria, se

solicita de conformidad con 42 USC § 12188 (a) (2) y 28 CFR § 36.504 que

se ordene el cierre y clausura de la Propiedad como medida para detener la

condición discriminatoria hasta tanto la Parte Peticionada haya acreditado de

manera fehaciente a satisfacción del tribunal que se ha eliminado el discrimen;

D. Pago de los costos de la acción y gastos de litigio, de conformidad con 42
USC § 12205;

E. Pago de honorarios razonables de abogados *no* bajo las Reglas de
Procedimiento Civil de Puerto Rico, sino de conformidad con lo dispuesto en
42 U.S.C. § 12205 y 28 CFR § 36,505 y su jurisprudencia vinculante
interpretativa y;

F. La provisión de cualquier otro remedio que sea justo y propio.


**SOMETIDO RESPETUOSAMENTE**.

Hoy 17 de julio de 2020.

f/Zuleika Castro De Jesus
 Lic. Zuleika Castro De Jesus
PR Bar No.: RUA-21258
FL Bar No.: 1022294
D'Jesus Law Offices
1969 S. Alafaya Trail #379
Orlando, FL 32828-8732
zcastro@djesuslaw.com
T.: (407) 267-7130
Fax: N/A

f/José Carlos Vélez Colón
 Lic. José C. Vélez Colon
RUA  18913
Velez Law Group
421 Ave Muñoz Rivera
San Juan, PR 00918
jvelez@velezlawgroup.com
T.: (787) 599-9003
Fax: N/A